UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHY GIESBRECHT, | |
| Plaintiff, | Case No.: _____ |
| -against- | **COMPLAINT** |
| CRH MEDICAL CORPORATION, TUSHAR RAMANI, IAN WEBB, DAVID A. JOHNSON, TODD PATRICK, and BRIAN GRIFFIN, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Cathy Giesbrecht ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This is an action brought by Plaintiff against CRH Medical Corporation ("CRH" or the "Company") and the members of CRH's board of directors (the "Board" or the "Individual Defendants" and together with CRH, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of CRH by WELL Health Technologies Corp. ("WELL") (the "Proposed Merger").

2.       On February 6, 2021, CRH and WELL entered an Arrangement Agreement (the "Arrangement Agreement"), pursuant to which each share of CRH common stock will be converted into the right to receive $4.00 in cash (the "Merger Consideration").

3.       On March 19, 2021, in order to solicit CRH shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading

proxy statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial analyses and presentations made by CRH's lead financial advisor, Citigroup Global Markets Inc. ("Citi"), and its historical relationships and compensation; (ii) financial projections for CRH; and (iii) the process that culminated in the Proposed Merger.

5.      The special meeting of CRH shareholders to vote on the Proposed Merger will be held on April 16, 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote on the Proposed Merger and properly exercise her corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to CRH's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. CRH is a registrant with the SEC and lists it shares to trade on a United States stock exchange. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, CRH's common stock trades on NYSE American, which is headquartered in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Moreover, according to its SEC filings, the Company's U.S. registered agent is located in this District.

## **PARTIES**

10.      Plaintiff is, and at all relevant times has been, a shareholder of CRH.

11.      Defendant CRH provides services and products for the treatment of gastrointestinal diseases. The Company's common stock trades on the NYSE American under the ticker symbol "CRHM".

12.      Individual Defendant Tushar Ramani is, and has been at all relevant times, the Company's Chief Executive Officer and Chairman of the CRH Board.

13.      Individual Defendant Ian Webb is, and has been at all relevant times, a director of CRH.

14. Individual Defendant David A. Johnson is, and has been at all relevant times, a director of CRH.

15. Individual Defendant Todd Patrick is, and has been at all relevant times, a director of CRH.

16. Individual Defendant Brian Griffin is, and has been at all relevant times, a director of CRH.

17. The Individual Defendants referred to in ¶¶12-16 are collectively referred to herein as the "Individual Defendants" or the "Board" and together with CRH as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.     Background and the Proposed Merger**

18. CRH is a healthcare products and services company. The Company is focused on providing gastroenterologists throughout the United States with services and products for the treatment of gastrointestinal diseases. The Company provides anesthesia services for patients undergoing endoscopic procedures in ambulatory surgical centers. In addition, the Company owns the CRH O'Regan System, a single-use, disposable, hemorrhoid banding technology for treating all grades of hemorrhoids. The Company distributes the O'Regan System, treatment protocols, and operational and marketing expertise as a complete package directly to gastroenterology practices, creating relationships with the gastroenterologists it serves. The CRH O'Regan System is currently used in all 48 lower U.S. states.

19. WELL is an omni-channel digital health company primarily engaged in operating primary healthcare facilities, as well as an electronic medical records (EMR) business. It provides software as a service (SaaS) EMR services to doctors, operates as a national telehealth service, and is a provider of digital health, billing, and cybersecurity related technology solutions. The company

owns and operates over 20 medical clinics and provides digital EMR software and services to over 2,000 medical clinics. Its clinics offer a range of services such as walk in appointments, family medicine, sleep apnea facilities, Botox treatments, and women's clinics. WELL is also engaged in the business of providing secure clinic management, telehealth and practice management software related services.

20.     On February 8, 2021, CRH issued a press release announcing the Proposed Merger, which states in relevant part:

### CRH Medical Announces Agreement to be Acquired by Well Health

VANCOUVER, Feb. 8, 2021 /CNW/ - CRH Medical Corporation (TSX: CRH) (NYSE: CRHM) ("CRH" or the "Company") today announced that it has signed a definitive agreement (the "Acquisition Agreement") with Well Health Technologies Corp. ("WELL Health" or "WELL"), pursuant to which WELL Health will acquire all of the issued and outstanding shares of CRH for US$4.00 per share, representing an aggregate purchase price of approximately US$292.7 million (the "Acquisition") and a transaction value of approximately US$369.2 million inclusive of credit facility. The purchase price represents a premium of approximately 83% to the closing price of the Company's shares on February 5, 2021 (the last trading day prior to announcement of the Acquisition), and a premium of approximately 80% to the 30-day volume-weighted average price of the Company's shares as of that date. WELL Health has today announced that it has received binding commitments in connection with a concurrent non-brokered private placement financing that is expected to close on or before February 15, 2021, however the Acquisition is not subject to any financing condition.

"This transaction is the logical next step for CRH as WELL adds CRH to its portfolio of healthcare related businesses" commented Tushar Ramani, CEO of the Company. "Since joining the Company, my mandate has been to drive the value of CRH through organic and acquisitive growth, and the results of those efforts are reflected in the premium being paid to shareholders in this transaction."

**Details of the Transaction**

The Acquisition, which is to be carried out by way of a court-approved plan of arrangement under the Business Corporations Act (British Columbia), will require the approval of: (i) two-thirds of the votes cast by shareholders of the Company; and (ii) two-thirds of the votes cast by shareholders, holders of stock options and holders of restricted share units, voting together as single class. The Company's directors and officers, holding an aggregate of approximately 2.1% of the

outstanding common shares of the Company, have each entered into voting support agreements to vote their shares in favour of the Acquisition. Completion of the Acquisition will also be subject to court and regulatory approvals and clearances, as well as other customary closing conditions. Subject to the satisfaction of such conditions, the Acquisition is expected to be completed during Q2 2021.

The Acquisition Agreement contains certain customary provisions, including covenants in respect of non-solicitation of alternative acquisition proposals, a right to match any superior proposals for WELL Health and a termination fee of $10 million payable to WELL in certain circumstances. The Acquisition Agreement also provides for a reverse termination fee of $10 million payable to CRH in the event of certain breaches of a representation, warranty or covenant by WELL Health.

Further details with respect to the Acquisition will be included in the proxy statement and information circular to be mailed to security holders in connection with the meeting that will be held to consider the Acquisition. A copy of the Acquisition Agreement will be filed on the Company's SEDAR profile and with the U.S. Securities and Exchange Commission and will be available for viewing at www.sedar.com and www.sec.gov.

Citi is serving as CRH's lead financial advisor in connection with the transaction, with Canaccord Genuity also providing financial advice. The Company's legal advisors in connection with the transaction are Blake, Cassels & Graydon, LLP and Skadden, Arps, Slate, Meagher & Flom LLP.

## II.     The Proxy Omits Material Information

21.     On March 19, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to CRH's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for CRH's shareholders to make an informed decision in connection with the Proposed Merger.

### A.     Citi's Financial Analyses and Relationships

22.     The Proxy indicates that, on May 18, 2020, the Board engaged Citi to act as the Company's financial advisor in connection with its exploration of a strategic transaction. The

Proxy further states that Citi provided input and analyses to the Board regarding the financial aspects of WELL's proposals and the Merger Consideration, including on February 4, 2021 – the same day Canaccord Genuity LLC ("Canaccord"), the Company's other financial advisor, presented its fairness opinion[1] to the Board—where "Citi reviewed with the CRH Board a presentation prepared by Citi, which summarized, among other things, WELL's proposal and Citi's financial analyses of WELL's proposal." Proxy at 33. The Proxy then states that these financial analyses were a "material" factor the Board considered in recommending the Proposed Merger to shareholders. Proxy at 37.

23.     However, and <u>first</u>, the Proxy fails to disclose **<u>any</u>** analyses performed by Citi or any summary thereof. Such information is plainly material to CRH shareholders and strikes at the heart of the decision they are being asked to make regarding the Proposed Merger. The omission of this material information from the Proxy is in direct violation of securities regulations Item 1015 and Item 14(b)(6) (17 CFR § 229.1015 and 17 CFR § 240.14a-101) and renders the description provided therein misleadingly incomplete.

24.     <u>Second</u>, pursuant to the Company's engagement agreement with Citi, the Company agreed that Citi would be entitled to receive certain fees payable upon delivery of an opinion (if requested by the Company) and consummation of any transaction. The Company also agreed to reimburse Citi for certain out-of-pocket expenses incurred by it in connection with its engagement and to indemnify Citi against certain liabilities that may arise out of its engagement. The Proxy also states that, in connection with the Arrangement, Citi is entitled to receive a transaction fee of $6.3 million, all of which is payable upon completion of the Proposed Merger. However, the Proxy

---

[1]     Indeed, the language used to describe the opinions is identical: "Canaccord Genuity reviewed with the CRH Board a presentation prepared by Canaccord Genuity, which summarized, among other things, WELL's proposal and Canaccord Genuity's financial analyses of WELL's proposal." Proxy at 33.

fails to state the historical relationships between and/or any prior services rendered (and compensation received) by Citi on the one hand, and the Company, the Individual Defendants, WELL, and/or any affiliates thereof, on the other hand—specifically including, but not limited to, whether Citi had any involvement with any of the financing necessary to complete the Proposed Merger.

25.    Disclosure of historical relationships and/or compensation received or to be received as a result of the relationship between a financial advisor and the company it advises, or its related affiliates, is required pursuant to Item 1015. Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know of any economic motivations and/or conflicts of interest that the Company's financial advisor might have.

        B.    <u>CRH's Financial Projections</u>

26.    In connection with CRH's evaluation of the Proposed Merger, CRH senior management prepared certain financial projections and forecasts of CRH's standalone performance for the fiscal years ending December 31, 2020 through December 31, 2025 (the "Forecasts"). Certain of such Forecasts were provided to Citi, Canaccord, the Special Committee, the Board, WELL, and certain other potential acquirers of CRH.

27.    Specifically, the Proxy indicates that CRH management prepared certain Forecasts in the "fall of 2020," and then updated the Forecasts "in December 2020 solely to remove any revenue or EBITDA contribution from United Digestive following the expiration of such service agreements in the fourth quarter of 2021." The Proxy presents the Forecasts, including the

revisions to reflect the removal of United Digestive revenue and EBITDA contributions, as the "CRH High-Growth Case." The Proxy further indicates that CRH management prepared certain additional forecasts in January 2021, which "assumed levels of investment in acquisitions, product sale growth and anesthesia services growth based on and substantially consistent with levels and trends observed by CRH in its prior financial periods," and which are presented in the Proxy as the "CRH Normalized Case." The CRH Normalized Case was provided to Citi and Canaccord and used by Canaccord in connection with its fairness opinion.

28.     However, and <u>third</u>, the Proxy fails to disclose the precise dates that the Forecasts, including the CRH High-Growth Case and the CRH Normalized Case, were prepared, and certain underlying inputs and assumptions upon which they were made. The timing of the creation of each case is material information to shareholders to determine whether certain accretive transactions were incorporated into the Forecasts. By way of example, the Company announced the completion of accretive transactions on August 4, 2020, September 1, 2020, October 6, 2020, and December 14, 2020, but the Proxy fails to specifically indicate whether these transactions were incorporated into the Forecasts. This information is particularly relevant regarding the CRH Normalized Case as it was the basis of Canaccord's fairness opinion.

29.     <u>Fourth</u>, and importantly, shareholders are entitled to complete disclosure regarding the Company's discussions and negotiations with United Digestive ("UD"). The Proxy indicates that, on December 22, 2020, "CRH announced that it had received notice from its **largest** customer, United Digestive, advising that United Digestive did not intend to renew certain professional services agreements set to expire on October 31, 2021." As a result, the Company updated the Forecasts to remove United Digestive's revenue and EBITDA contributions. Notably, United Digestive's contribution to CRH's financials was significant, accounting for approximately

**17%** of the Company's total anesthesia revenue in 2020, as demonstrated by Canaccord's analysis of the Company:

| Financial Statistic | Implied Per Share Equity Value | Median |
|---|---|---|
| 9/30 LTM Adjusted EBITDA | $ 3.09-$3.69 | $ 3.46 |
| 2020E Adjusted EBITDA | $ 3.41-$4.11 | $ 3.75 |
| 2021E Adjusted EBITDA | $ 4.26-$6.52 | $ 5.77 |
| 2021E Adjusted EBITDA, as adjusted to exclude United Digestive | $ 3.04-$4.77 | $ 4.19 |

However, "CRH ha[d] been in negotiations with UD for several months," "intend[ed] to continue discussions with UD regarding a new agreement," and, just two weeks after the execution of the Merger Agreement, signed a five-year exclusive Management Services Agreement with UD whereby CRH will earn a fee for managing UD's anesthesia services at its surgery centers, effective as of November 1, 2021.

30.     It strains credulity to believe that CRH's management and/or the Board was unaware of these negotiations as it was simultaneously negotiating and finalizing the Arrangement Agreement (including, apparently, the treatment of the Company's equity awards, as outlined below) and lowering the Company's projections. Omission in the Proxy of additional information relating to the negotiation of the Management Services Agreement with UD, including, but not limited to, the fees the Company expects to realize from the agreement, renders the Proxy materially misleading and leaves CRH's shareholders in an informational vacuum and unable to make an informed decision regarding the value of their shares.

31.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses valuation information, such information must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other

so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Citi, Canaccord, and the Board, but have failed to disclose the above material information regarding the preparation of the Forecasts. This omission renders the summary of Canaccord's valuation analyses, the projections tables, and value and financial picture of the Company provided in the Proxy misleadingly incomplete.

### C.    Process Related Disclosures

32.    <u>Fifth</u>, the Proxy indicates that, on December 28, 2020, after the Company had already engaged Citi and began diligence discussions with WELL regarding a transaction, the Board formed a Special Committee consisting of Individual Defendants Ian Webb, Brian Griffin and David Johnson, and directed legal counsel to prepare a formal resolution confirming the formation of the Special Committee and setting its mandate. The Proxy fails to disclose, however, the powers and authority granted to the Special Committee, including but not limited to, whether the Special Committee was empowered to hire its own, independent advisors, and/or whether the Special Committee was empowered to consider other potential strategic transactions.[2]

33.    <u>Finally</u>, the Proxy indicates that, in connection with the completion of the Proposed Merger, certain outstanding CRH equity awards will be exchanged for equity securities in WELL while other CRH equity awards will be exchanged for cash. The Proxy indicates that, on January 25, 2021, CRH and WELL's respective legal counsel discussed certain issues in the draft Arrangement Agreement, including the "treatment of employee equity awards," but the Proxy fails to include any additional information regarding the substance of these discussions and

---

[2]    Notably, it appears that the Special Committee met just twice, on December 28, 2020 after it was formed and on January 29, 2021, and only discussed a transaction with WELL, before determining on February 4, 2021 to finalize the Arrangement Agreement with WELL.

11

the position of each party regarding the treatment of the Company's equity awards. This information is material to shareholders in light of the fact that Individual Defendant Ramani stands to receive approximately $4.7 million and the Company's other executive officers stand to receive an aggregate of approximately $4.2 million for their Company equity awards in connection with the Proposed Merger.

***

34.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information. Item 1015 and Item 14(b)(6) require the disclosure of the omitted Citi presentation and the financial advisor's relationships and compensation. 17 CFR § 229.1015; 17 CFR § 240.14a-101. Therefore, the omission of this information violates Section 14(a).

39.     Defendants have issued the Proxy with the intention of soliciting CRH's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, *inter alia*: (i) Citi's valuation analyses and relationships; (ii) financial projections for CRH; and (iii) the process that culminated in the Proposed Merger.

40.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to CRH's shareholders, though they could have done so without extraordinary effort.

41.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.

As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that Citi and Canaccord reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Canaccord and Citi, as well as Canaccord's fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Arrangement Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as CRH's officers and directors.

43.     CRH is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

44.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who

will be deprived of her right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of CRH's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of CRH within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of CRH, and participation in and/or awareness of CRH's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CRH, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CRH, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Merger.

49.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Arrangement Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     Thus, the Individual Defendants have violated § 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 25, 2021

**OF COUNSEL**

**KAHN SWICK & FOTI, LLC**
Michael Palestina
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: 504.455.1400
Direct: 504.648.1843
Facsimile: 504.455.1498
michael.palestina@ksfcounsel.com

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*